# U.S. District Court
## District of New Hampshire (Concord)
## CIVIL DOCKET FOR CASE #: 1:24−cv−00311−SM−AJ

Fellers et al v. SAU 67, Superintendent et al
Assigned to: Judge Steven J. McAuliffe
Referred to: US Magistrate Judge Andrea K Johnstone
Cause: 42:1983 Civil Rights Act

Date Filed: 09/30/2024
Jury Demand: Defendant
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Kyle Fellers**                                   represented by   **Endel Kolde**
Institute for Free Speech
1150 Connecticut Ave NW
Suite 801
Washington, DC 20036
202−301−1664
Email: dkolde@ifs.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brett Robert Nolan**
Institute for Free Speech
1150 Connecticut Ave NW
Suite 801
Washington, DC 20036
202−301−3300
Email: bnolan@ifs.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nathan John Ristuccia**
Institute for Free Speech
1150 Connecticut Ave NW
Suite 801
Washington, DC 20036
202−301−1215
Email: nristuccia@ifs.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Richard J. Lehmann**
Lehmann Major List PLLC
6 Garvins Falls Road
Concord, NH 03301
603−731−5435
Fax: 720−995−9156
Email: rick@nhlawyer.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Anthony Foote**                    represented by   **Endel Kolde**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brett Robert Nolan**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nathan John Ristuccia**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Richard J. Lehmann**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nicole Foote**                    represented by   **Endel Kolde**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brett Robert Nolan**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nathan John Ristuccia**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Richard J. Lehmann**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Eldon Rash**                    represented by   **Endel Kolde**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Brett Robert Nolan**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nathan John Ristuccia**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Richard J. Lehmann**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

## Defendant

**SAU 67, Superintendent**
*Superintendent of Schools, State Administrative Unit 67, in her official and individual capacities*
*other*
Marcy Kelley

represented by **Brian J.S. Cullen**
Cullen Collimore Shirley PLLC
37 Technology Way
Suite 3W2
Nashua, NH 03060
603–881–5500
Email: bcullen@cullencollimore.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan M. Shirley**
Cullen Collimore Shirley PLLC
37 Technology Way
Suite 3W2
Nashua, NH 03060
603–881–5500
Fax: 603–881–5507
Email: jshirley@cullencollimore.com
*ATTORNEY TO BE NOTICED*

## Defendant

**Bow High School, Athletic Director**
*Athletic Director, Bow High School, in his official and individual capacities*
*other*
Michael Desilets

represented by **Brian J.S. Cullen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan M. Shirley**
(See above for address)
*ATTORNEY TO BE NOTICED*

## Defendant

**Bow High School, Principal**
*Principal, Bow High School, in his official and individual capacities*

represented by **Brian J.S. Cullen**
(See above for address)
*LEAD ATTORNEY*

*other*
Matt Fisk

ATTORNEY TO BE NOTICED

**Jonathan M. Shirley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Philip Lamy**
*Lieutenant, Bow Police Department, in*
*his individual capacity*
*TERMINATED: 10/18/2024*

represented by **Eric Alexander Maher**
Donahue Tucker & Ciandella PLLC
16 Acadia Ln
PO Box 630
Exeter, NH 03833
603 778–0686
Fax: 603 772–4454
Email: emaher@dtclawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Steve Rossetti**
*soccer referee, New Hampshire*
*Interscholastic Athletic Association, in*
*his individual capacity*
*TERMINATED: 01/06/2025*

represented by **Dennis T. Ducharme**
Ducharme Resolutions PLLC
20 Market St, Ste 206
Manchester, NH 03101
603–935–7292
Email: dennis@ducharmeresolutions.com
*TERMINATED: 01/06/2025*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Bow School District**

represented by **Brian J.S. Cullen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan M. Shirley**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/30/2024 | 1 | NEW CASE/ COMPLAINT Filing fee $ 405, receipt number ANHDC–2557222 filed by Nicole Foote, Anthony Foote, Kyle Fellers, Eldon Rash. (Attachments: # 1 Exhibit Ex. A Policy KFA, # 2 Exhibit Ex. B Desilets Email, # 3 Exhibit Ex. C Extracts from Handbook and NHIAA, # 4 Exhibit Ex. D Photo of Wristband, # 5 Exhibit Ex. E Facebook post, # 6 Exhibit Ex. F Kelley Stmt, # 7 Exhibit Ex. G Foote No Trespass Order, # 8 Exhibit Ex. H Fellers No Trespass Order, # 9 Exhibit Ex. I Addendum, # 10 Exhibit Ex. J Second Addendum, # 11 Civil Cover Sheet Civil Cover Sheet)(Lehmann, Richard) (Additional attachment(s) added on 9/30/2024: # 12 Summonses) (mc). (Entered: 09/30/2024) |

| | | |
|---|---|---|
| 09/30/2024 | 2 | MOTION for Nathan Ristuccia to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2557251.) filed by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash.Follow up on Objection on 10/15/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit (Affidavit) Declaration of Nathan Ristuccia)(Lehmann, Richard) (Entered: 09/30/2024) |
| 09/30/2024 | 3 | MOTION for Brett R. Nolan to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2557256.) filed by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash.Follow up on Objection on 10/15/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Lehmann, Richard) (Additional attachment(s) added on 9/30/2024: # 1 Declaration) (mc). (Entered: 09/30/2024) |
| 09/30/2024 | 4 | MOTION for Endel Kolde to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2557263.) filed by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash.Follow up on Objection on 10/15/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit (Affidavit) Declaration of Endel Kolde)(Lehmann, Richard) (Entered: 09/30/2024) |
| 09/30/2024 | | Case assigned to Judge Steven J. McAuliffe and US Magistrate Judge Andrea K Johnstone. The case designation is: 1:24–cv–311–SM–AJ. Please show this number with the judge designation on all future pleadings. (mc) (Entered: 09/30/2024) |
| 09/30/2024 | | NOTICE. This case has been designated for Electronic Case Filing. All further submissions shall be filed in compliance with the Administrative Procedures for Electronic Case Filing. Pro se litigants are not required to file electronically and may continue to file documents in paper format. Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE. (mc) (Entered: 09/30/2024) |
| 09/30/2024 | 5 | Summonses issued electronically as to Bow High School, Athletic Director, Bow High School, Principal, Bow School District, Philip Lamy, Steve Rossetti, SAU 67, Superintendent. **NOTICE: Counsel shall print and serve the summonses and all attachments in accordance with Fed. R. Civ. P. 4.** (Attachments: # 1 Notice ECF)(mc) (Entered: 09/30/2024) |
| 09/30/2024 | 6 | Summons issued electronically as to SAU 67, Superintendent. **NOTICE: Counsel shall print and serve the summons and all attachments in accordance with Fed. R. Civ. P. 4.** (Attachments: # 1 Notice ECF)(mc) (Entered: 09/30/2024) |
| 10/04/2024 | 7 | Return of Service Executed as to SAU 67, Superintendent by All Plaintiffs. Served/Mailed on 9/30/2024. Answer Follow Up on 10/21/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Lehmann, Richard) (Entered: 10/04/2024) |
| 10/04/2024 | 8 | Return of Service Executed as to Bow High School, Principal by All Plaintiffs. Served/Mailed on 9/30/2024. Answer Follow Up on 10/21/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Lehmann, Richard) (Entered: 10/04/2024) |
| 10/04/2024 | 9 | **FILED IN ERROR – See doc. no. 13.** Return of Service Executed as to Philip Lamy by All Plaintiffs. Served/Mailed on 9/30/2024. Answer Follow Up on 10/21/2024. The court only follow up date DOES NOT include 3 additional days that may apply per |

| | | |
|---|---|---|
| | | FRCP 6(d) and FRCrP 45(c).(Lehmann, Richard) Modified on 10/4/2024 to add: filed in error text (lw). (Entered: 10/04/2024) |
| 10/04/2024 | 10 | Return of Service Executed as to Bow High School, Athletic Director by All Plaintiffs. Served/Mailed on 9/30/2024. Answer Follow Up on 10/21/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Lehmann, Richard) (Entered: 10/04/2024) |
| 10/04/2024 | 11 | Return of Service Executed as to Steve Rossetti by All Plaintiffs. Served/Mailed on 10/1/2024. Answer Follow Up on 10/22/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Lehmann, Richard) (Entered: 10/04/2024) |
| 10/04/2024 | 12 | Return of Service Executed as to Bow School District by All Plaintiffs. Served/Mailed on 9/30/2024. Answer Follow Up on 10/21/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Lehmann, Richard) (Entered: 10/04/2024) |
| 10/04/2024 | 13 | Return of Service Executed as to Philip Lamy by All Plaintiffs. Served/Mailed on 10/1/2024. Answer Follow Up on 10/22/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Lehmann, Richard) (Entered: 10/04/2024) |
| 10/04/2024 | 14 | Emergency MOTION for Temporary Restraining Order and Preliminary Injunction filed by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash. **HEARING REQUESTED.**Follow up on Objection on 10/18/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Memorandum of Law Memo in Support of TRO/PI, # 2 Proposed Order Proposed Orders for TRO and PI, # 3 Exhibit (Affidavit) Declaration of Kyle Fellers, # 4 Exhibit (Affidavit) Declaration of Andy Foote, # 5 Exhibit (Affidavit) Declaration of Nicole Foote, # 6 Exhibit (Affidavit) Declaration of Eldon Rash, # 7 Exhibit Ex A BSD Policy KFA, # 8 Exhibit Ex B Desilets Email, # 9 Exhibit Ex C Extracts from Handbook and NHIAA Policies, # 10 Exhibit Ex D Photo of wristband, # 11 Exhibit Ex E Facebook Post, # 12 Exhibit Ex F Kelley Statement, # 13 Exhibit Ex G Foote No Trespass Order (Redacted), # 14 Exhibit Ex H Fellers No Trespass Order (Redacted), # 15 Exhibit Ex I Fellers Addendum No Trespass Order (Redacted), # 16 Exhibit Ex J Fellers Second Addendum No Trespass (Redacted), # 17 Exhibit Ex K Kelley Email on Designated Protest Area, # 18 Exhibit Ex L Notice of Designated Protest Area, # 19 Exhibit Ex M Bow Soccer Field Map, # 20 Exhibit Ex N RTK email string with District and Lamy, # 21 Exhibit Ex O Police call log, # 22 Exhibit Ex P Photo from protest area to field, # 23 Exhibit Ex Q Photo from sideline to protest area)(Lehmann, Richard) Modified on 11/6/2024 to add: preliminary injunction text (lw). (Entered: 10/04/2024) |
| 10/04/2024 | 15 | Addendum/ to 14 Emergency MOTION for Temporary Restraining Order *Memo of Law* by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash. (Lehmann, Richard) (Entered: 10/04/2024) |
| 10/04/2024 | 16 | NOTICE of Attorney Appearance by Brian J.S. Cullen on behalf of Bow High School, Athletic Director, Bow High School, Principal, Bow School District, SAU 67, Superintendent Attorney Brian J.S. Cullen added to party Bow High School, Athletic Director(pty:dft), Attorney Brian J.S. Cullen added to party Bow High School, Principal(pty:dft), Attorney Brian J.S. Cullen added to party Bow School District(pty:dft), Attorney Brian J.S. Cullen added to party SAU 67, |

| | | |
|---|---|---|
| | | Superintendent(pty:dft).(Cullen, Brian) (Entered: 10/04/2024) |
| 10/04/2024 | 17 | NOTICE of Attorney Appearance by Jonathan M. Shirley on behalf of Bow High School, Athletic Director, Bow High School, Principal, Bow School District, SAU 67, Superintendent Attorney Jonathan M. Shirley added to party Bow High School, Athletic Director(pty:dft), Attorney Jonathan M. Shirley added to party Bow High School, Principal(pty:dft), Attorney Jonathan M. Shirley added to party Bow School District(pty:dft), Attorney Jonathan M. Shirley added to party SAU 67, Superintendent(pty:dft).(Shirley, Jonathan) (Entered: 10/04/2024) |
| 10/04/2024 | 18 | NOTICE of Notice of Intent to File Objection *to Motion for TRO* by Bow School District.(Cullen, Brian) (Entered: 10/04/2024) |
| 10/04/2024 | | **ENDORSED ORDER granting 2 Motion to Appear Pro Hac Vice. *Text of Order: Granted. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* So Ordered by US Magistrate Judge Andrea K Johnstone.**<br><br>The clerks office will provide the admitted attorney with instructions on how to obtain access to electronic filing by separate email. The admitted attorney must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of New Hampshire. After obtaining e–filing access, the admitted attorney must file an appearance to begin receiving electronic notices.(mc)<br><br>(Entered: 10/07/2024) |
| 10/04/2024 | | **ENDORSED ORDER granting 3 Motion to Appear Pro Hac Vice. *Text of Order: Granted. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* So Ordered by US Magistrate Judge Andrea K Johnstone.**<br><br>The clerks office will provide the admitted attorney with instructions on how to obtain access to electronic filing by separate email. The admitted attorney must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of New Hampshire. After obtaining e–filing access, the admitted attorney must file an appearance to begin receiving electronic notices.(mc)<br><br>(Entered: 10/07/2024) |
| 10/04/2024 | | **ENDORSED ORDER granting 4 Motion to Appear Pro Hac Vice. *Text of Order: Granted. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* So Ordered by US Magistrate Judge Andrea K Johnstone.**<br><br>The clerks office will provide the admitted attorney with instructions on how to obtain access to electronic filing by separate email. The admitted attorney must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of New Hampshire. After obtaining e–filing access, the admitted attorney must file an appearance to begin receiving electronic notices.(mc)<br><br>(Entered: 10/07/2024) |
| 10/07/2024 | 19 | NOTICE of Attorney Appearance by Nathan John Ristuccia on behalf of Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash Attorney Nathan John Ristuccia added to |

| | | |
|---|---|---|
| | | party Kyle Fellers(pty:pla), Attorney Nathan John Ristuccia added to party Anthony Foote(pty:pla), Attorney Nathan John Ristuccia added to party Nicole Foote(pty:pla), Attorney Nathan John Ristuccia added to party Eldon Rash(pty:pla).(Ristuccia, Nathan) (Entered: 10/07/2024) |
| 10/07/2024 | 20 | NOTICE of Attorney Appearance by Endel Kolde on behalf of Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash Attorney Endel Kolde added to party Kyle Fellers(pty:pla), Attorney Endel Kolde added to party Anthony Foote(pty:pla), Attorney Endel Kolde added to party Nicole Foote(pty:pla), Attorney Endel Kolde added to party Eldon Rash(pty:pla).(Kolde, Endel) (Entered: 10/07/2024) |
| 10/07/2024 | | NOTICE OF HEARING re: 14 Emergency MOTION for Temporary Restraining Order. Motion Hearing set for 10/8/2024 02:30 PM before Judge Steven J. McAuliffe.(lw) (Entered: 10/07/2024) |
| 10/07/2024 | 21 | NOTICE of Attorney Appearance by Brett Robert Nolan on behalf of Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash Attorney Brett Robert Nolan added to party Kyle Fellers(pty:pla), Attorney Brett Robert Nolan added to party Anthony Foote(pty:pla), Attorney Brett Robert Nolan added to party Nicole Foote(pty:pla), Attorney Brett Robert Nolan added to party Eldon Rash(pty:pla).(Nolan, Brett) (Entered: 10/07/2024) |
| 10/07/2024 | 22 | OBJECTION to 14 Emergency MOTION for Temporary Restraining Order filed by Bow School District. Follow up on Reply up 10/15/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit 1 – Desilets Declaration, # 2 Exhibit A – Declaration of Desilets, # 3 Exhibit B – Declaration of Desilets, # 4 Exhibit 2 – Kelley Declaration, # 5 Exhibit A – Declaration of Kelley, # 6 Exhibit 3 – Fisk Declaration, # 7 Exhibit 4 – Lamy Declaration)(Cullen, Brian) (Entered: 10/07/2024) |
| 10/08/2024 | 23 | NOTICE of Attorney Appearance by Eric Alexander Maher on behalf of Philip Lamy Attorney Eric Alexander Maher added to party Philip Lamy(pty:dft).(Maher, Eric) (Entered: 10/08/2024) |
| 10/08/2024 | | Minute Entry for proceedings held before Judge Steven J. McAuliffe. MOTION HEARING held on 10/8/2024 re: 14 Emergency MOTION for Temporary Restraining Order. Hearing on Preliminary Injunction to be scheduled. Orders to issue. (Court Reporter: Jan–Marie Glaze) (Pltfs Atty: Endel Kolde, Nathan Ristuccia, Richard Lehmann) (Defts Atty: Brian Cullen, Jonathan Shirley, Eric Maher)(Total Hearing Time: 1 hr. 25 min.) (lw) (Entered: 10/08/2024) |
| 10/08/2024 | | **ENDORSED ORDER re: 14 Emergency MOTION for Temporary Restraining Order.** *Text of Order: Denied, for the reasons discussed on the hearing record, specifically plaintiffs' failure to meet its burden to establish likelihood of success on the merits.* **So Ordered by Judge Steven J. McAuliffe.(lw)** (Entered: 10/08/2024) |
| 10/08/2024 | | **ENDORSED ORDER –** *Text of Order: Defendants shall produce relevant body camera footage as part of the discovery in this matter, related to interactions with plaintiffs on September 17, 2024.* **So Ordered by Judge Steven J. McAuliffe.(lw)** (Entered: 10/08/2024) |
| 10/09/2024 | | NOTICE of Hearing. Evidentiary Hearing set for 11/21/2024 and 11/22/2024 09:30 AM before Judge Steven J. McAuliffe.(lw) (Entered: 10/09/2024) |
| 10/15/2024 | 24 | |

| | | TRANSCRIPT of Proceedings for Motion Hearing held on October 8, 2024. Court Reporter: Jan–Marie Glaze, Telephone # 603 225–1453. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90–day period. If you would like to order a copy, please contact the court reporter at the above listed phone number.<br><br>**NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request.**<br><br>Redaction Request Follow Up 11/5/2024. Redacted Transcript Follow Up 11/15/2024. Release of Transcript Restriction set for 1/13/2025.(lw) (Entered: 10/15/2024) |
|---|---|---|
| 10/17/2024 | 25 | MOTION Correct TRO docket text *to reflect actual order partially granting restraining order* filed by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash.Follow up on Objection on 10/31/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Kolde, Endel) (Entered: 10/17/2024) |
| 10/17/2024 | 26 | MOTION EXPEDITED request to set hearing–related deadlines for Nov. 21–22 prelim. inj. hearing and hearing on the merits filed by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash.Follow up on Objection on 10/31/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Kolde, Endel) (Entered: 10/17/2024) |
| 10/18/2024 | 27 | ///NOTICE of Voluntary Dismissal as to Phillip Lamy by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash(Kolde, Endel) (Entered: 10/18/2024) |
| 10/18/2024 | 28 | OBJECTION to 14 Emergency MOTION for Temporary Restraining Order *and Preliminary Injunction* filed by Bow School District. Follow up on Reply on 10/25/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Cullen, Brian) (Entered: 10/18/2024) |
| 10/21/2024 | 29 | **REPLACED – See doc. no. 34.** ANSWER to Complaint filed by Steve Rossetti.(Ducharme, Dennis) Modified on 10/23/2024 to add: replaced text (lw). (Entered: 10/21/2024) |
| 10/21/2024 | 30 | ANSWER to 1 Complaint – New Case,, with jury demand filed by Bow School District.(Cullen, Brian) (Entered: 10/21/2024) |
| 10/21/2024 | 31 | *Michael Desilet's* ANSWER to 1 Complaint – New Case,, with jury demand filed by Bow High School, Athletic Director.(Cullen, Brian) (Entered: 10/21/2024) |
| 10/21/2024 | 32 | *Marcy Kelley's* ANSWER to 1 Complaint – New Case,, with jury demand filed by SAU 67, Superintendent.(Cullen, Brian) (Entered: 10/21/2024) |
| 10/21/2024 | 33 | *Matthew Fisk's* ANSWER to 1 Complaint – New Case,, with jury demand filed by Bow High School, Principal.(Cullen, Brian) (Entered: 10/21/2024) |
| 10/22/2024 | 34 | *Signed Answer To correct filing error* ANSWER to Complaint filed by Steve Rossetti.(Ducharme, Dennis) (Entered: 10/22/2024) |
| 10/22/2024 | 35 | AMENDED COMPLAINT against Bow High School, Athletic Director, Bow High School, Principal, Bow School District, Steve Rossetti, SAU 67, Superintendent *(and* |

| | | |
|---|---|---|
| | | *not against former def. Phillip Lamy)* filed by Nicole Foote, Anthony Foote, Kyle Fellers, Eldon Rash. (Attachments: # 1 Exhibit A: Policy KFA, # 2 Exhibit B: Desilets email, # 3 Exhibit C: Extracts from handbook and policy, # 4 Exhibit D: Wristband photo, # 5 Exhibit E: Facebook post, # 6 Exhibit F: Kelley statement, # 7 Exhibit G: Foote no−trespass order, # 8 Exhibit H: Fellers no−trespass order, # 9 Exhibit I: 1st addendum, # 10 Exhibit J: 2nd addendum)(Kolde, Endel) (Entered: 10/22/2024) |
| 10/23/2024 | | **ENDORSED ORDER granting in part and denying in part 25 Motion Correct TRO docket text to reflect actual order partially granting restraining order. *Text of Order: Granted in part. The motion as filed was denied. The court's oral order is best understood as a separate order. But, no matter, the effect is clear to counsel for all parties as noted by them on the record.* So Ordered by Judge Steven J. McAuliffe.(lw)** (Entered: 10/23/2024) |
| 10/25/2024 | 36 | RESPONSE to Motion re 26 MOTION EXPEDITED request to set hearing−related deadlines for Nov. 21−22 prelim. inj. hearing and hearing on the merits filed by Bow School District. (Cullen, Brian) (Entered: 10/25/2024) |
| 10/25/2024 | 37 | REPLY to Objection to Motion re 14 Emergency MOTION for Temporary Restraining Order *and Motion for Preliminary Injunction* filed by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash. Surreply due by 10/30/2024. (Kolde, Endel) (Entered: 10/25/2024) |
| 11/01/2024 | 38 | MOTION in Limine to Present Proof First filed by Bow School District.Follow up on Objection on 11/15/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Cullen, Brian) (Entered: 11/01/2024) |
| 11/01/2024 | 39 | MOTION in Limine to Take Judicial Notice of Findings in Tirrell v. Edelblut filed by Bow School District.Follow up on Objection on 11/15/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Cullen, Brian) (Entered: 11/01/2024) |
| 11/04/2024 | 40 | ANSWER to 35 Amended Complaint,, with jury demand filed by Steve Rossetti.(Ducharme, Dennis) (Entered: 11/04/2024) |
| 11/04/2024 | 41 | NOTICE of Defendant Rossetti's Notice of no position on requests for imjunctive relief by Steve Rossetti.(Ducharme, Dennis) (Entered: 11/04/2024) |
| 11/04/2024 | 42 | ANSWER to 35 Amended Complaint,, with jury demand filed by Bow School District.(Cullen, Brian) (Entered: 11/04/2024) |
| 11/04/2024 | 43 | ANSWER to 35 Amended Complaint,, with jury demand filed by Bow High School, Athletic Director.(Cullen, Brian) (Entered: 11/04/2024) |
| 11/04/2024 | 44 | ANSWER to 35 Amended Complaint,, with jury demand filed by Bow High School, Principal.(Cullen, Brian) (Entered: 11/04/2024) |
| 11/04/2024 | 45 | ANSWER to 35 Amended Complaint,, with jury demand filed by SAU 67, Superintendent.(Cullen, Brian) (Entered: 11/04/2024) |
| 11/04/2024 | 46 | MOTION in Limine to Preserve Defendants' Jury Trial Right filed by Bow School District.Follow up on Objection on 11/18/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Shirley, Jonathan) (Entered: 11/04/2024) |

| | | |
|---|---|---|
| 11/06/2024 | 47 | **ORDER granting in part and denying in part 26 Motion EXPEDITED request to set hearing–related deadlines for Nov. 21–22 prelim. inj. hearing and hearing on the merits. So Ordered by Judge Steven J. McAuliffe.(lw)** (Entered: 11/06/2024) |
| 11/07/2024 | 48 | Assented to MOTION to Amend *Complaint to Eliminate Compensatory Damages* filed by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash. (Attachments: # 1 Exhibit A: Second Amended Complaint, # 2 Exhibit B: Redline of Second Am. Complaint)(Kolde, Endel) (Entered: 11/07/2024) |
| 11/08/2024 | 49 | MOTION Expedited Motion to Reinstate Hearing on the Merits *due to absence of jury triable issues* filed by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash.Follow up on Objection on 11/22/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Kolde, Endel) (Entered: 11/08/2024) |
| 11/09/2024 | 50 | RESPONSE to Motion re 39 MOTION in Limine to Take Judicial Notice of Findings in Tirrell v. Edelblut filed by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash. (Kolde, Endel) (Entered: 11/09/2024) |
| 11/13/2024 | 51 | **ORDER granting 38 Motion in Limine to Present Proof First; denying 39 Motion in Limine to Take Judicial Notice of Findings in Tirrell v. Edelblut; denying as moot 46 Motion in Limine to Preserve Defendants' Jury Trial Right; granting 48 Assented to Motion to Amend Complaint to Eliminate Compensatory Damages; denying 49 Motion Expedited Motion to Reinstate Hearing on the Merits due to absence of jury triable issues.** *At the conclusion of the motion hearing on November 21–22, the court will consult with counsel to set a pretrial schedule, including a date for a bench trial. See Rule 16.* **So Ordered by Judge Steven J. McAuliffe. Second Amended Complaint due by 11/18/2024.(lw)** (Entered: 11/13/2024) |
| 11/14/2024 | 52 | SECOND AMENDED COMPLAINT against Bow High School, Athletic Director, Bow High School, Principal, Bow School District, Steve Rossetti, SAU 67, Superintendent *(Second Amended Complaint)* filed by Nicole Foote, Anthony Foote, Kyle Fellers, Eldon Rash. (Attachments: # 1 Exhibit A: Policy KFA, # 2 Exhibit B: Desilets email, # 3 Exhibit C: Handbook extracts, # 4 Exhibit D: Wristband photo, # 5 Exhibit E: Facebook post, # 6 Exhibit F: Kelley statement, # 7 Exhibit G: Foote NTO, # 8 Exhibit H: Fellers NTO, # 9 Exhibit I: 1st addendum, # 10 Exhibit J: 2d addendum)(Kolde, Endel) Modified on 11/14/2024 to add: "second" text (lw). (Entered: 11/14/2024) |
| 11/14/2024 | 53 | MOTION for Reconsideration re 51 Order on Motion in Limine,,,,,,,,, Order on Motion to Amend,,, Order on Motion for Miscellaneous Relief,, *(requesting the Court to reinstate the original order of proof as it had originally ordered)* filed by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash.Follow up on Objection on 11/29/2024. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Kolde, Endel) (Entered: 11/14/2024) |
| 11/14/2024 | 54 | Final Witness List *For 11/21 and 22 Hearing* by Steve Rossetti. (Ducharme, Dennis) (Entered: 11/14/2024) |
| 11/14/2024 | | **ENDORSED ORDER granting in part and denying in part 53 Motion for Reconsideration re: 51 Order on Motions.** *Text of Order: The court granted defendants' motion in limine to present proof on the First Amendment issue at the hearing to be held next week before plaintiffs' presentation because defendants will bear the burden to justify restrictions on plaintiffs' speech. As the court noted, plaintiffs had not then objected to the reverse order of proof. Plaintiffs now object* |

| | | |
|---|---|---|
| | | *and ask the court to reconsider allowing defendants to proceed first on that issue. The order of proof will be addressed and decided at the hearing, if necessary, after the parties' presentations on the question of mootness. Plaintiffs' motion for reconsideration (doc. no. 53) is granted in part and denied in part as provided in this order.* **So Ordered by Judge Steven J. McAuliffe.(lw)** (Entered: 11/15/2024) |
| 11/15/2024 | 55 | Final Witness List by Bow School District, SAU 67, Superintendent, Bow High School, Athletic Director, Bow High School, Principal. (Cullen, Brian) (Entered: 11/15/2024) |
| 11/15/2024 | 56 | Final Witness List *for Nov. 21–22 Hearing (Plaintiffs)* by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash. (Kolde, Endel) (Entered: 11/15/2024) |
| 11/18/2024 | 57 | Defendant's Revised List of Exhibits by Bow School District, SAU 67, Superintendent, Bow High School, Athletic Director, Bow High School, Principal(Cullen, Brian) (Entered: 11/18/2024) |
| 11/18/2024 | 58 | Plaintiff's Exhibit List for Nov. 21–22 Hearing by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash(Kolde, Endel) (Entered: 11/18/2024) |
| 11/18/2024 | 59 | BRIEF/MEMORANDUM *(Prehearing) of Bow School District* by Bow School District(Shirley, Jonathan) (Entered: 11/18/2024) |
| 11/18/2024 | 60 | BRIEF/MEMORANDUM *Plaintiffs' Pre–Hearing Brief* by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash(Kolde, Endel) (Entered: 11/18/2024) |
| 11/21/2024 | | Minute Entry for proceedings held before Judge Steven J. McAuliffe. EVIDENTIARY HEARING held on 11/21/2024 re: Preliminary Injunction. Witnesses Appearing: Kyle Fellers, Anthony Foote. (Court Reporter: Liza Dubois – AM Session; Susan Bateman – PM Session) (Pltfs Atty: Endel Kolde, Nathan Ristuccia, Richard Lehmann) (Defts Atty: Brian Cullen, Jonathan Shirley, Dennis Ducharme)(Total Hearing Time: 4 hrs. 52 min.) (lw) (Entered: 11/22/2024) |
| 11/22/2024 | | Minute Entry for proceedings held before Judge Steven J. McAuliffe. EVIDENTIARY HEARING held on 11/22/2024 re: Preliminary Injunction. Witnesses Appearing: Eldon Rash, Marcy Kelley, Michael Desilets, Steve Rossetti, Matthew Fisk. (Court Reporter: Susan Bateman – AM Session; Brenda Hancock – PM Session) (Pltfs Atty: Endel Kolde, Nathan Ristuccia, Richard Lehmann) (Defts Atty: Brian Cullen, Jonathan Shirley, Dennis Ducharme)(Total Hearing Time: 3 hrs. 15 min.) (lw) (Entered: 11/22/2024) |
| 11/22/2024 | | ORAL RENEWED MOTION for Temporary Restraining Order filed by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash.(lw) (Entered: 11/22/2024) |
| 11/22/2024 | | **ORAL ORDER denying [] Oral Renewed Motion for Temporary Restraining Order. So Ordered by Judge Steven J. McAuliffe.(lw)** (Entered: 11/22/2024) |
| 11/22/2024 | 61 | Final Witness List re: Evidentiary Hearing on Preliminary Injunction Motion by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash. (lw) (Entered: 11/22/2024) |
| 11/22/2024 | 62 | Final Witness List by Bow School District, SAU 67, Superintendent, Bow High School, Athletic Director, Bow High School, Principal. (lw) (Entered: 11/22/2024) |
| 11/22/2024 | 63 | Final Exhibit List re: Evidentiary Hearing on Preliminary Injunction Motion by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash. (lw) (Entered: 11/22/2024) |
| 11/22/2024 | 64 | |

| | | |
|---|---|---|
| | | Final Exhibit List re: Evidentiary Hearing on Preliminary Injunction Motion by Bow School District, SAU 67, Superintendent, Bow High School, Athletic Director, Bow High School, Principal. (lw) (Entered: 11/22/2024) |
| 12/02/2024 | 65 | TRANSCRIPT of Proceedings for Evidentiary Hearing – Day 1 held on November 21, 2024. Court Reporter: Susan Bateman – PM Session, Telephone # 603 225–1453. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90–day period. If you would like to order a copy, please contact the court reporter at the above listed phone number.<br><br>**NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request.**<br><br>Redaction Request Follow Up 12/23/2024. Redacted Transcript Follow Up 1/2/2025. Release of Transcript Restriction set for 3/3/2025.(lw) (Entered: 12/02/2024) |
| 12/02/2024 | 66 | TRANSCRIPT of Proceedings for Evidentiary Hearing – Day 2 held on November 22, 2024. Court Reporter: Susan Bateman – AM Session, Telephone # 603 225–1453. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90–day period. If you would like to order a copy, please contact the court reporter at the above listed phone number.<br><br>**NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request.**<br><br>Redaction Request Follow Up 12/23/2024. Redacted Transcript Follow Up 1/2/2025. Release of Transcript Restriction set for 3/3/2025.(lw) (Entered: 12/02/2024) |
| 12/02/2024 | 67 | TRANSCRIPT of Proceedings for Evidentiary Hearing – Day 1 held on November 21, 2024. Court Reporter: Liza Dubois – AM Session, Telephone # 603 225–1442. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90–day period. If you would like to order a copy, please contact the court reporter at the above listed phone number.<br><br>**NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request.**<br><br>Redaction Request Follow Up 12/23/2024. Redacted Transcript Follow Up 1/2/2025. Release of Transcript Restriction set for 3/3/2025.(lw) (Entered: 12/02/2024) |
| 12/02/2024 | 68 | |

| | | |
|---|---|---|
| | | ANSWER to 52 Amended Complaint,, with jury demand filed by Bow School District.(Cullen, Brian) (Entered: 12/02/2024) |
| 12/02/2024 | 69 | ANSWER to 52 Amended Complaint,, with jury demand filed by Bow High School, Athletic Director.(Cullen, Brian) (Entered: 12/02/2024) |
| 12/02/2024 | 70 | ANSWER to 52 Amended Complaint,, with jury demand filed by Bow High School, Principal.(Cullen, Brian) (Entered: 12/02/2024) |
| 12/02/2024 | 71 | ANSWER to 52 Amended Complaint,, with jury demand filed by SAU 67, Superintendent.(Cullen, Brian) (Entered: 12/02/2024) |
| 12/02/2024 | 72 | TRANSCRIPT of Proceedings for Evidentiary Hearing – Day 2 held on November 22, 2024. Court Reporter: Brenda Hancock – PM Session, Telephone # 603 225–1454. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90–day period. If you would like to order a copy, please contact the court reporter at the above listed phone number.<br><br>**NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request.**<br><br>Redaction Request Follow Up 12/23/2024. Redacted Transcript Follow Up 1/2/2025. Release of Transcript Restriction set for 3/3/2025.(lw) (Entered: 12/02/2024) |
| 12/13/2024 | 73 | BRIEF/MEMORANDUM *Closing Brief on Plaintiff's Request for a Preliminary Injunction* by Bow School District(Shirley, Jonathan) (Entered: 12/13/2024) |
| 12/13/2024 | 74 | BRIEF/MEMORANDUM *Plaintiffs' Post–Hearing Brief In Support of Preliminary Injunction* by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash(Kolde, Endel) (Entered: 12/13/2024) |
| 12/16/2024 | 75 | BRIEF/MEMORANDUM *Plaintiffs' Reply to Def. Post–Hearing Brief re Preliminary Injunction* by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash(Kolde, Endel) (Entered: 12/16/2024) |
| 12/17/2024 | 76 | Assented to MOTION to Extend Time to File a reply to Plaintiffs' Post Hearing Brief filed by Bow School District. (Attachments: # 1 Exhibit 1 – Bow SD's Reply to Plaintiffs' Post–Hearing Brief)(Cullen, Brian) (Entered: 12/17/2024) |
| 12/29/2024 | | **ENDORSED ORDER granting 76 Assented to Motion to Extend Time to File a reply to Plaintiffs' Post Hearing Brief. *Text of Order: Granted.* So Ordered by Judge Steven J. McAuliffe.(lw)** (Entered: 12/30/2024) |
| 01/03/2025 | 77 | ///STIPULATION of Dismissal as to as to Defendant Steve Rossetti only by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash(Kolde, Endel) (Entered: 01/03/2025) |
| 01/06/2025 | | **ENDORSED ORDER re: 77 Stipulation of Dismissal as to as to Defendant Steve Rossetti only. *Text of Order: Stipulation approved; case dismissed as to defendant Rossetti.* So Ordered by Judge Steven J. McAuliffe.(lw)** (Entered: 01/06/2025) |
| 01/30/2025 | | |

| | | |
|---|---|---|
| | | **ENDORSED ORDER.** *Text of Order: Defendants moved for an extension of time to file a reply and appended the proposed reply but failed to seek leave to file the reply. Doc. no. 76. The court granted extra time. End. Or. 12/29/2024. To date defendants have neither filed the reply nor sought leave to file the reply. Assuming that omission is an oversight, the court grants defendants leave to file the reply. Within 3 days, counsel shall electronically refile the reply attached to the motion for an extension of time, using the appropriate event in CMECF.* **So Ordered by Judge Steven J. McAuliffe.(lw)** (Entered: 01/30/2025) |
| 01/30/2025 | 78 | BRIEF/MEMORANDUM re 74 Brief *Reply to post−hearing brief* by Bow School District(Cullen, Brian) (Entered: 01/30/2025) |
| 02/26/2025 | 79 | MOTION to Expedite Decision on Plaintiffs' motion for preliminary injunction *by no later than April 14, 2025* filed by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash.Follow up on Objection on 3/12/2025. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit (Affidavit) : 2d Nicole Foote declaration, # 2 Exhibit R: HS lacrosse schedule, # 3 Exhibit S: MS lacrosse schedule, # 4 Exhibit (Affidavit) : 2d Anthony Foote declaration, # 5 Exhibit (Affidavit) : 2d Kyle Fellers declaration, # 6 Proposed Order)(Kolde, Endel) (Entered: 02/26/2025) |
| 04/14/2025 | 80 | **ORDER re: 14 Emergency MOTION for Temporary Restraining Order and Preliminary Injunction.** *For the forgoing reasons, as well as those articulated in defendants' legal memoranda (documents no. 22 and 73), plaintiffs have failed to demonstrate a likelihood of success on the merits of their claims. Consequently, their Motion for Preliminary Injunction (document no. 14) is necessarily denied. If appropriate, the parties should advise the clerk within fourteen (14) days if they wish to supplement the evidentiary record or submit supplemental briefing in advance of a ruling on plaintiffs' request for permanent injunctive relief. So Ordered by Judge Steven J. McAuliffe.(lw)* (Entered: 04/14/2025) |
| 04/14/2025 | | **ENDORSED ORDER granting 79 Motion to Expedite Decision on Plaintiffs' motion for preliminary injunction by no later than April 14, 2025.** *Text of Order: Granted; order issued today.* **So Ordered by Judge Steven J. McAuliffe.(lw)** (Entered: 04/14/2025) |
| 04/14/2025 | 81 | NOTICE of Plaintiffs on Permanent Injunction as directed by Dkt. 80 *(no supplementation needed)* by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash.(Kolde, Endel) (Entered: 04/14/2025) |
| 05/02/2025 | 82 | NOTICE OF INTERLOCUTORY APPEAL as to 80 Order,, by Kyle Fellers, Anthony Foote, Nicole Foote, Eldon Rash.(Filing fee $ 605, receipt number ANHDC−2631107.) [NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the Forms & Notices section of the First Circuit website at www.ca1.uscourts.gov, MUST be completed and submitted to the U.S. Court of Appeals for the First Circuit.] (Ristuccia, Nathan) (Entered: 05/02/2025) |
| 05/05/2025 | 83 | Appeal Cover Sheet as to 82 Notice of Interlocutory Appeal, filed by Nicole Foote, Eldon Rash, Anthony Foote, Kyle Fellers. (lw) (Entered: 05/05/2025) |
| 05/05/2025 | 84 | Clerk's Certificate transmitting Record on Appeal to US Court of Appeals, documents numbered 80 through 84, re 82 Notice of Interlocutory Appeal.(lw) (Entered: 05/05/2025) |

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Kyle Fellers, et al

    v.                                        No. 24-cv-311-SM

SAU 67, Superintendent, et al



CLERK'S CERTIFICATE TO
CIRCUIT COURT OF APPEALS

    I, Lianne Wagner, Deputy Clerk of the United States District Court for the District of New Hampshire, do hereby certify that the following documents constitute the record on appeal to the First Circuit Court of Appeals:

    DOCUMENTS NUMBERED: 80 through 84

    The Clerk's Office hereby certifies the record and docket sheet available through ECF to be the certified record and the certified copy of the docket entries.


    IN TESTIMONY WHEREOF, I hereunto set my hand and affix the seal of said Court, at Concord, in said District, on this day, May 5, 2025

**Tracy Uhrin, Clerk**


**By: /s/ Lianne Wagner, Deputy Clerk**

**May 05, 2025**



cc:  All Counsel of Record

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

APPEAL COVER SHEET

1.    USDC/NH Case No. 24-cv-311-SM

2.    TITLE OF CASE: <u>Kyle Fellers, et al v. SAU 67, Superintendent, et al</u>

3.    TYPE OF CASE: Civil

4.    NAME OF APPELLANT(S) & COUNSEL FOR APPELLANT(S):
      <u>See certified copy of docket (ECF registered users not provided with a copy of docket)</u>

5.    NAME OF APPELLEE(S) & COUNSEL FOR APPELLEE(S):
      <u>See certified copy of docket (ECF registered users not provided with a copy of docket)</u>

6.    NAME OF JUDGE: Judge Steven McAuliffe

7.    DATE OF JUDGMENT OR ORDER ON APPEAL: **April 14, 2025**

8.    DATE OF NOTICE OF APPEAL: **May 2, 2025**

9.    FEE PAID or IFP: NO

10.   COURT APPOINTED COUNSEL: NO

11.   COURT REPORTER(S):   and DATES:       10/08/2024 – Jan-Marie Glaze
                                            11/21/2024 – Liza Dubois (AM),
                                            Susan Bateman (PM);
                                            11/22/2024 – Susan Bateman (AM),
                                            Brenda Hancock (PM)

12.   TRANSCRIPTS ORDERED/ON FILE: YES

13.   HEARING/TRIAL EXHIBITS: YES

14.   MOTIONS PENDING: NO

15.   GUIDELINES CASE:

16.   RELATED CASES or CROSS APPEAL:

17.   SPECIAL COMMENTS:

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| KYLE FELLERS, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:24-cv-311-SM-AJ |
| MARCEY KELLEY, *et al.*, | |
| Defendants. | |

## PLAINTIFFS' NOTICE OF APPEAL

Plaintiffs now appeal to the U.S. Court of Appeals for the First Circuit from the order of the U.S. District Court for the District of New Hampshire, entered on April 14, 2025, denying Plaintiffs' motion for preliminary injunction.

Defendants and their counsel are receiving notice of this appeal via notice of electronic filing.

Dated: May 2, 2025              Respectfully submitted,

*/s/ Endel Kolde*              By:    */s/ Richard J. Lehmann*
Endel Kolde*                          Richard J. Lehmann
DC Bar No. 1782129                    New Hampshire Bar No. 9339
Brett Nolan*                          LEHMANN MAJOR LIST, PLLC
DC Bar No. 90014964                   6 Garvins Falls Rd,
Nathan Ristuccia*[1]                  Concord, NH 03301
Virginia Bar No. 98372                603.731.5435
INSTITUTE FOR FREE SPEECH             rick@nhlawyer.com
1150 Connecticut Avenue, N.W.
Suite 801
Washington, DC 20036
202.301.3300
dkolde@ifs.org
bnolan@ifs.org
nristuccia@ifs.org

---

[1] Not a D.C. Bar Member but providing legal services in the District of Columbia exclusively before federal courts, as authorized by D.C. Ct. App. R. 49(c)(3).

*Pro hac vice*

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Kyle Fellers; Anthony Foote;
Nicole Foote; and Eldon Rash,
    Plaintiffs

    v.                                    Case No. 24-cv-311-SM-AJ
                                          Opinion No. 2025 DNH 050

Marcy Kelley, Superintendent
of SAU 67; Michael Desilets,
Athletic Director of Bow High School;
Matt Fisk, Principal of Bow High School;
and Bow School District,
    Defendants


**O R D E R**

    This case presents an increasingly common, and commonly difficult constitutional problem: When may public school authorities limit symbolic speech during school athletic contests to protect students from perceived harm?  When protected rights clash, as they do here — when opposing sides each have a point, but compromise proves elusive — courts must strike the balance and explain why, under the particular circumstances presented, the law directs that one right must give way to another.


    Pending before the court is plaintiffs' Motion for Preliminary Injunction (document no. 14).  Among other things, plaintiffs seek an order preventing defendants from enforcing

any Bow High School ("BHS") policies that might prevent

plaintiffs from attending BHS extracurricular events and:

> non-disruptively expressing disfavored viewpoints on
> political or social issues, including protesting
> against allowing biological boys playing in girls' and
> women's sports, by silently wearing a pink wristband
> on the sidelines or displaying a sign in the parking
> lot.

Plaintiffs' Proposed Preliminary Injunction Order (document no.

14-2) at 2-3.  On November 21 and 22, 2024, the court held an

evidentiary hearing, at which the parties presented evidence and

argument in support of their respective positions.  Later, the

parties supplemented their argument with legal memoranda.


        For the reasons discussed below, plaintiffs' Motion for

Preliminary Injunction (document no. 14) is denied.


### Factual Background

A.    <u>Prior Litigation</u>.

        In July of 2024, New Hampshire enacted House Bill 1205,

entitled "an act relative to women's sports."  <u>See</u> N.H. Rev.

Stat. Ann. 193:41-42.  That act became effective on August 18,

2024.  Generally speaking, it prevents transgender girls from

playing on girls'/women's public school athletic teams.  It

provides: "An interscholastic sport activity or club athletic

team sponsored by a public school or a private school whose students or teams compete against a public school must be expressly designated as one of the following based on the biological sex at birth of intended participants: (1) Males, men, or boys; (2) Females, women, or girls; or (3) Coed or mixed." RSA 193:41 II(a). It further provides that, "Athletic teams or sports designated for females, women, or girls shall not be open to students of the male sex." Id. at II(b). And, for purposes of the Act, the sex of the student athletes shall be determined by the biological sex at birth. Id. at III.

Shortly after the Act's passage, it was challenged by two transgender girls and their parents, on grounds that it violated their equal protection rights under the federal constitution, as well as provisions of Title IX. See Tirrell v. Edelblut, No. 24-cv-251-LM-TSM, 2024 WL 4132435, 2024 DNH 073 (Sept. 10, 2024). Following extensive briefing and an evidentiary hearing, this court (McCafferty, J.) concluded that the plaintiffs were likely to prevail on the merits of their claims and issued a preliminary injunction blocking enforcement of the statute. Specifically, the court enjoined the defendants (including the Commissioner of the New Hampshire Department of Education) from enforcing the provisions of the Act against plaintiffs and required defendants to permit plaintiffs "to try out for,

3

practice with, compete with, and play on school sports teams designated for girls on the same terms and conditions as other girls." Id. at *20.

One of the plaintiffs in that litigation, Parker Tirrell, is a transgender girl and a sophomore at Plymouth Regional High School. She has been diagnosed with gender dysphoria. As found in Tirrell, "Parker began taking medications to block male puberty in May 2023, toward the end of her eighth-grade year. She began female hormone therapy in December 2023 while in ninth grade. Her treatment has caused her to develop physiological changes associated with female puberty. She will not undergo male puberty. According to the uncontested factual record in this case, there is no medical justification to preclude Parker from participating in girls' sports." Id. at *3. The court also concluded that:

> Playing on a boys' team is not a realistic option for Parker. Parker's providers have prescribed treatment requiring her to live and participate in the world as a girl. Playing on a boys' soccer team would likely have adverse impacts on Parker's mental health and would exacerbate symptoms of gender dysphoria. According to Parker's mother, Parker would be devastated if she is not allowed to play on her soccer team solely because she is transgender.

Id.

4

B.    <u>Events Leading up to the Game between BHS and Plymouth</u>.

Not surprisingly, the decision in <u>Tirrell</u> was and continues
to be controversial.  The parents of a few students on the BHS
girls' soccer team were concerned that their daughters would be
competing against a team on which a biological boy would be
playing.  Indeed, they also were aware that such a match was
upcoming.  In the days leading up to that match, BHS
administrators learned that some Bow parents had discussed the
possibility of conducting a protest of some sort when the team
from Plymouth (the team on which Parker Tirrell played) came to
Bow.  "The plans discussed reportedly included wearing dresses
to the game, buying anti-trans gear, making signs, and generally
heckling and intimidating the player."  Affidavit of Michael
Desilets, BHS Athletic Director (document no. 22-1) at para. 3.
<u>See also</u> Defendants' Hearing Exhibit F, Email from Shannon Farr
(parent of a girl on the BHS soccer team) to Mike Desilets dated
September 11, 2024 (six days before the game).[1]

---

[1]    In her email to Athletic Director Desilets, Shannon Farr
wrote, "I am writing because I have concerns about statements
other team parents have been making regarding both the trans-
female player from Plymouth and their potential plans as to how
they want to handle the game on the 17th.  Today, in Laconia
(while in earshot of other Bow families, Laconia families,
children, grandparents, friends, etc.) several Bow parents
discussed wearing dresses to the [Plymouth] game, buying anti-
trans warm-up shirts for the Bow players, making signs in
protest of trans athletes, and generally <u>planning on how they</u>

Although plaintiffs claim that school administrators refused to meet with them or consider their concerns, that is not entirely correct.  On September 13, Nicole Foote (one of the plaintiffs in this case and the mother of a player on the BHS team) met with Athletic Director Desilets, "to complain about the competitive unfairness and injury risk to female athletes inherent in allowing biological males [to] participate in women's sports."  Second Amended Complaint (document no. 52) at para. 21.  Desilets informed Foote that the federal court's preliminary injunction prevented him from doing anything to preclude Parker from playing in the game.  Id.

Defendant Marcy Kelley is the Superintendent of Schools for SAU 67, which includes the Bow School District.  At the preliminary injunction hearing, she testified that she first learned of the potential for a protest/disruption at the soccer match when she received a copy of Shannon Farr's email.  Kelley was also aware of various Facebook posts made by one of the plaintiffs, Andy Foote (father of one of the BHS team members).

---

can heckle and intimidate this player.  I understand this is an extremely sensitive subject and I know many don't have opinions aligned with mine.  However, I don't feel the soccer field is a place for hatred or disrespect and based on the comments I've seen on Facebook and have overheard at several games, I have concerns of what this game could devolve into."  (emphasis supplied).

In one such post, which was made four days before the match
against Plymouth, Foote wrote:

> On September 17, 2024, the BHS XX Lady Falcons soccer
> team will be required to face a team that includes a
> biological male on the roster.
>
>                      * * *
>
> Biological males have no place in women's sports.  We
> need to protect the integrity and safety of female
> athletics.
>
> Please come out to support our XX Lady Falcons and
> show your solidarity with our girls' teams as they
> face this challenge.

Plaintiffs' Hearing Exhibit 5.


A few days before the game, another plaintiff, Kyle
Fellers, purchased a large number of pink wristbands and gave
them to Foote.  Using a black magic marker, Foote adorned each
with some sort of symbol: either "XX," or the female gender
symbol ("♀") or "NAD" (which Foote said meant "not a dude").  He
uploaded a picture of roughly 30 of those modified pink
wristbands in another Facebook post.  <u>See</u> Photograph of Wrist
Bands (document no. 22-3).[2]  In this case, only the wristbands
with the "XX" symbol are at issue.

---

[2]    Mike Desilets, the BHS athletic director, testified that he
and Matt Fisk, the Principal of Bow High School, saw that
photograph and Foote's Facebook post on the morning of the game.
Desilets Affidavit (document no. 22-1) at para. 8.

C.    The "XX" Symbol in Context.

    Superintendent Kelley testified that the "XX" symbol
displayed on Foote's wristbands – in a context such as this –
conveys a well-understood anti-trans message.  She noted that
Riley Gaines actively uses the "XX" symbol in her social media
posts, her clothing line, and speaking engagements in support of
her own campaign to prevent transgender athletes from
participating in women's sports.  Hearing Transcript, Day Two,
Morning Session, at 31-32.  Plaintiffs — particularly Andy Foote
and Kyle Fellers — often reference Riley Gaines in their social
media posts and on their signs/posters.  Gaines is a former
collegiate athlete best known for having lost an NCAA swimming
competition to a transgender competitor.  She has become a
celebrity who advocates excluding trans athletes from women's
sports.  She operates the "Riley Gaines Center" and has, among
other things, written a book on the topic of transgender
athletes in women's sports.  See rileygainescenter.org ("My team
of Ambassadors and I are building a movement of students,
athletes, and concerned citizens who are fed up with the attack
on our freedoms and rights – and who dare to defy the dangerous
gender ideology that's spreading rampant and unchecked
throughout society.").  Gaines also sells a line of clothing
advocating the "protection of women's sports" — a phrase often
used by plaintiffs — and the exclusion of trans athletes from

exclusively female competitions.  Her clothing line includes t-shirts and hats with statements like, "XX ≠ XY," "**BOY**cott," "Save Women's Sports," and "you cannot defend what you cannot define."

Kelley testified that she has seen Gaines' advertisements for speaking engagements, visited Gaines' websites, and seen her social media postings.  Kelley said she is aware that both Gaines and, in context, the "XX" symbol, are understood to stand for the broad proposition that transgender athletes should be completely banned from competing in women's sports because they are not women.  Kelley also noted that the "XX" symbol was used during the recent summer Olympics to convey an "anti-trans" message in the wake of controversy involving two transgender female Olympic boxers.  <u>See generally</u> Hearing Transcript, Day Two, Morning Session, at 33-35.[3]

---

[3]    More than a month before the Plymouth game, Fellers sent an email to Superintendent Kelley (and a number of others), in which he made reference to the Olympic boxing controversy.

> For those of you still living under a rock or in denial about the ramification of biological boys playing in girls' sports, here is exhibit A on your delusional fantasies.

> Angela Carini, an Olympic Woman Boxer from Italy surrendered to a mentally ill man in the boxing ring. Surrendering her dream of an Olympic Gold.  She was left crying in pain and in shame as she admitted after the bout that she had never been hit as hard as the 46 seconds she lasted in the ring with this maniac.  This happened on the

When asked why she would prevent a parent from wearing the
"XX" wristbands to a BHS extracurricular event but might allow
someone to wear a "pride" symbol on an article of clothing,
Kelley testified that, in contrast to the "XX" symbol, the pride
symbol conveys a message of inclusion and does not target or
harass any specific student.  Hearing Transcript, Day Two,
Morning Session, at 68.

D.    Defendants' Preparations for the Game.

Shortly before the game, Superintendent Kelley spoke with a
member of the school board, who expressed concern for the safety
and well-being of the Plymouth players in general and Parker
Tirrell in particular.  Kelley testified that Foote's Facebook
post of September 13 could be interpreted as a "call to come
out" to this particular game and rally around the position that
only biological females should participate in girls' sports.
Hearing Transcript, Day Two, Morning Session (document no. 66)
at 41.  See also Id. at 54-55 ("There was sort of this call to
action that happened via social media and it was picked up by

---

       same day the Biden/Harris administrations rewrites Title IX
       to appease a mentally ill cult.

       For those of you in support of this madness, I hope you
       feel proud of yourselves.

Defendants' Hearing Exhibit E.

other known [anti-transgender] folks, and so I was concerned

that we also may have people there who we don't know, who are

not parents, and what that might lead to . . .   The concern was

how many people.  Asking people to come to our game, are we

going to be able to handle that as a school.").

    The "problematic piece" of Foote's proposed demonstration/

protest, Kelley said, was that it might be directed specifically

at the transgender student on the opposing team.  Hearing

Transcript, Day Two, Morning Session, at 39.  Based upon Foote's

Facebook posts, Kelley (and other administrators) believed the

protest was "about targeting a trans player."  Id. at 29-30.

Targeting or demeaning or harassing any player is not tolerated

from anyone attending a BHS athletic event and it is

specifically prohibited by both the BHS Athletics Handbook, as

well as the Bow School Board Policy on "Public Conduct on School

Property".

    The Bow High School Athletics Handbook (provided to all

students athletes and their parents) states that:

        It is the expectation of every fan to maintain a
        positive attitude, to treat players, coaches and
        officials with respect, and to cheer for their team as
        opposed to cheering against the other team.  Fans are
        not to use the names or numbers of opposing teams, nor

should they be trying to directly communicate [with]
or distract other players.

Exhibit C to Second Amended Complaint (document no. 52-3)

(emphasis in original).  As relevant to this proceeding, the Bow

School Board Policy on "Public Conduct on School Property"

provides, in part, that:

> For purposes of this policy, "school property" means
> any buildings, vehicles, property, land, or facilities
> used for school purposes or school-sponsored events,
> whether public or private.
>
> The School District expects mutual respect, civility,
> and orderly conduct among all individuals on school
> property or at a school event.  No person on school
> property or at a school event shall:
>
>> Injure, threaten, harass, or intimidate a
>> staff member, a School Board member, sports
>> official or coach, or any other person;
>>
>> Violate any Federal or New Hampshire law, or
>> town or county ordinance;
>>
>> Impede, delay, disrupt, or otherwise
>> interfere with any school activity or
>> function (including using cellular phones in
>> a disruptive manner);
>>
>> Violate other District policies or
>> regulations, or an authorized District
>> employee's directive.
>
> Any person who violates this policy or any other
> acceptable standard of behavior may be ordered to
> leave school grounds.  Law enforcement officials may
> be contacted at the discretion of the supervising
> District employee if such employee believes it
> necessary.

Exhibit A to Second Amended Complaint (document no. 52-1).  See also Defendants' Hearing Exhibit D, Bow School District Policy – Title IX Prohibition of Sex Discrimination and Sex-Based Harassment: Policy and Grievance Procedure.

In short, Superintendent Kelley testified that a combination of factors – including Foote's emails and social media postings; the photographs of the many "XX" pink wristbands that Foote had prepared for the protest; plaintiffs' use of photographs of Riley Gaines and their repeated references to her; the timing of plaintiffs' protest; and the email from Shannon Farr about a demonstration and possible heckling and intimidation of an opposing player by Bow parents – caused her to be concerned that plaintiffs' protest/demonstration would likely single out a specific transgender player on the Plymouth team with a demeaning message attacking her presence on the field based upon her biological gender at birth and/or her gender identity.

When asked about plaintiffs' opinions surrounding trans players and girls sports, Kelley said she was not troubled by their opinions, but very much concerned about protecting an individual student from being the target of any protest.  She also noted the School District's obligations under Title IX and

the New Hampshire Law Against Discrimination to protect students
from bullying, discrimination, and harassment, particularly as
it relates to sex and gender.  And, she reiterated that the
public's attendance at school events is conditioned upon their
compliance with those anti-discrimination laws as well as Bow's
policies regulating school activities.  Hearing Transcript, Day
Two, Morning Session, at 68.  Finally, Superintendent Kelley
pointed out that she simply did not know what to expect on game
day, but to prevent any potential disruption, additional faculty
members and an officer from the Bow Police Department were asked
to come to the game.

In a further effort to avoid any sort of disturbance and to
prevent any BHS parents from specifically targeting the
transgender player on the Plymouth team, BHS Athletic Director
Mike Desilets sent an email to the parents of girls on the Bow
team on the evening before the game.  In it, he wrote:

> Good evening soccer families-
>
> Please read the following attached messaging regarding
> Bow High School's status as a member of the NHIAA as
> well as some information from our Athletics Handbook
> regarding sportsmanship and sideline behavior.
>
> I understand that there are some differing opinions
> regarding tomorrow's game, and <u>that is perfectly fine</u>.
> Please understand that <u>any inappropriate signs,
> references, language or anything else present at the
> game will not be tolerated</u>.  This is a contest between

high school student-athletes and should be treated as
such.

Thank you in advance for your attention to this
important matter.

Exhibit B to Plaintiffs' Original Complaint (document no. 1-2)

(emphasis supplied).  Attached to that email were excerpts from

the NHIAA rules, as well as the BHS policy on sportsmanship.


Early the following morning (game day), plaintiff Andy

Foote responded to Desilets' email with one of his own.  In it,

Foote wrote:

Is this all you have to say about this game? You've
proven yourselves weak, ineffective, and completely
out of touch with real leadership.

This isn't "just another game" - not by a long shot.
None of you had a single conversation with our team.
None.  You ignored us, and now you expect us to just
go along with this?

I'm a leader, and a real leader doesn't stand by while
their players are thrown into harm's way.  You don't
let biological males — who are stronger, faster, and
more physically dominant — compete against women.  And
you don't sit around waiting for someone to get hurt
before you take action.

Exhibit 1 to Affidavit of Michael Desilets (document no. 22-2)

(emphasis supplied).  See also Hearing Transcript, Day One,

Afternoon Session, at 96 (Foote testifying that he understood

that someone reading his email might get the impression that he
planned to do something at the game).

It is plain why Foote and the other plaintiffs saw this as
something other than "just another game" and chose this
particular match to stage their protest.  A transgender girl was
going to be playing for the Plymouth team and in plaintiffs'
mind she embodied everything that plaintiffs feared (e.g.,
injuries, lost opportunities for biological girls to play on
interscholastic teams, missed opportunities to win
championships, etc.).  Plaintiffs opposed Parker's presence on
the Plymouth team and her participation in the upcoming match,
and they decided to protest against both – that is, to "protest
males, biological males, in women's sports."  Testimony of Eldon
Rash, Hearing Transcript, Day Two, Morning Session, at 9.

Parenthetically, the court notes that during the hearing,
plaintiffs (with the exception of Eldon Rash) and their counsel
almost studiously avoided the term "protest" to describe their
behavior, choosing instead to characterize it as merely a
"passive statement of support for women's athletics."  But, as
Foote necessarily conceded, the way they were "supporting
women's sports" was by symbolically communicating their
opposition to transgender players competing on girls' teams,

16

necessarily including the specific student athlete on the
Plymouth team.  Hearing Transcript, Day One, Afternoon Session,
at 126-31.  Moreover, as Rash repeatedly made clear during his
testimony, plaintiffs understood that this was, indeed, a
"protest" against a particular transgender girl participating in
this particular girls' soccer match and, more broadly, a protest
against any transgender girls or women participating in women's
athletics in general.  See Hearing Transcript, Day Two, Morning
Session, at 9 and 10.  See also Plaintiffs' Proposed Preliminary
Injunction Order (document no. 14-2) at 2-3 (seeking to prohibit
defendants from interfering with plaintiffs "protesting against
allowing biological boys playing in girls' and women's sports"
at BHS extracurricular events) (emphasis supplied).

    It probably also bears noting that no one was under the
mistaken impression that plaintiffs wore the modified pink
wristbands to show support for the battle against breast cancer
– a cause that also relies on pink symbols to communicate
relevant messaging – despite Fellers' initial claim when
confronted by school officials.  The evidence of record strongly
supports the conclusion that the message conveyed by the XX
wristbands, as reasonably understood by Bow School officials
(and no doubt many others who witnessed the protest), was in
essence: "Parker Tirrell does not belong; she should not be

allowed to play soccer for the Plymouth girls' team because she is not a girl, she is a biological boy; her "gender identity" as a girl is false and invalid; and she is neither accepted nor acceptable as a female student athlete participating in high school girls' soccer, nor is any other transgender girl."

E.    The BHS Match Against Plymouth.

The plaintiffs, Kyle Fellers, Andy Foote, Nicole Foote, and Eldon Rash, all attended the match between Bow High School and Plymouth Regional High School on September 17, 2024, at the BHS soccer fields.  Soon after the match began, Andy Foote distributed the pink wristbands adorned with the "XX" symbols to his wife and about half a dozen other spectators.  He told them not to put the bands on until halftime.  When asked why he didn't wear the wristband earlier in the match, Foote testified that he understood wearing it would likely provoke a response from school administrators and he didn't want to miss the first half of the match.  Hearing Transcript, Day One, Afternoon Session, at 102, 132.  That is, in light of Desilets' email from the night before, Foote "suspected something would happen" if he and the other plaintiffs decided to display the wristbands.  Id. at 132.

18

Nevertheless, at halftime, Foote and Fellers met in the
parking lot and put on the wristbands.  Foote also placed a
poster featuring a picture of Riley Gaines that read "Save
Women's Sports" (or something to that effect) on his Jeep.  The
men then returned to their seats on the sidelines of the field.
They did not shout, chant, or otherwise call attention to
themselves or their message.  Each simply displayed the pink
wristbands with the symbol "XX" written on it with a black magic
marker.  It is unclear what Foote was wearing, but Fellers wore
a short-sleeved shirt and his wristband was plainly visible.
See, e.g., Hearing Transcript, Day One, Afternoon Session, at
25.

About 10 minutes into the second half, school officials
noticed that several spectators were wearing the pink
wristbands.  Athletic Director Mike Desilets approached Fellers,
whispered in his ear, told him that he was not allowed to wear
the wristband, and said that Fellers had to either remove it or
leave the game.  Hearing Transcript, Day One, Afternoon Session,
at 25.  Fellers initially resisted, denying that it had anything
to do with transgender athletes participating in women's sports
and insisting, implausibly, that the pink band was simply to
show support for the fight against breast cancer.  Id. at 27-28.
At some point, Principal Matt Fisk and Lieutenant Lamy of the

Bow Police Department arrived and notified both Foote and
Fellers that they had to either remove the wristbands or leave
the game.  After a few minutes of heated discussion and
protestation from Fellers and Foote, both men eventually
acquiesced.  Eldon Rash — Feller's former father-in-law —
approached the group to see what was causing the commotion.
After hearing Fellers' explanation of the situation, Rash took
Fellers' wristband from him, put it on his own wrist, and
refused to remove it.

    Meanwhile, the head referee, former defendant Steve
Rossetti, saw the disturbance on the sidelines, decided to stop
the match, and directed the coaches to bring their players to
their respective benches.  Desilets met with Rosetti at
midfield, explained what was going on, and asked Rossetti to
give him a bit of time to try to resolve the issues on the
sideline.  At that point, it seems that both Fellers and Foote
had removed their wristbands, but Rash was refusing to do so.
The confrontation on the sidelines between various plaintiffs
and Athletic Director Desilets, Principal Fisk, and Lieutenant
Lamy continued.  Eventually, Desilets asked Lieutenant Lamy to
remove Fellers from the game.  Desilets returned to midfield
where he explained to Rossetti that Rash was refusing to remove
his wristband.  Desilets also told the Plymouth coach what was

going on.  In response, the coach reportedly told Desilets that

if Parker Tirrell learned that the game had been stopped because

of a protest related to her presence at the game, she would be

"devastated."

Rossetti (the referee) grew impatient with the lingering

delay, walked to the sideline, and told Rash that if he refused

to remove the wristband, he would stop the match.  Rossetti

apparently had no advance knowledge of plaintiffs' protest, was

unaware of what caused the disruption on the sideline, and did

not know what the pink wristbands symbolized or why they were

problematic – he simply wanted the disturbance to stop so he

could restart the match.  Rash continued to refuse to remove the

wristband.  Some fans on the sidelines began shouting at him and

urged Rash to remove his wristband so the match could resume.

Eventually, Rash acquiesced, removed the wristband and, after a

delay of roughly 10-15 minutes, the match resumed.

When asked why school officials demanded that plaintiffs

remove the wristbands, Superintendent Kelley testified that:

> We asked them to remove them because we believe that
> those are anti-trans symbols and they were targeting a
> player on the other team.  I believe they were
> targeting a student on the other team.  [The
> plaintiffs] planned and decided to do this on the one

time that we were playing the team that had a trans
student on it.  I think the timing is telling.

Hearing Transcript, Day Two, Morning Session, at 63-4.  <u>See also</u>
<u>Id</u>. at 67 ("they were displaying an anti-trans message on the
one day.  It's not supporting women's sports.  It's targeted at
the one day and that one student."); <u>id</u>. at 81 ("The only time
those signs came out was when we played a game against Plymouth
which includes the trans player.  At no other game.  No other
time.  This was organized and targeted."); <u>id</u>. at 78 (Kelley's
testimony that she didn't want Parker Tirrell (or, presumably,
any other transgender student who might have been at the game)
to see those anti-trans symbols and "feel like she doesn't
belong.  That it's wrong her being trans.").  <u>See generally</u>
Testimony of Anthony Foote, Hearing Transcript, Day One,
Afternoon Session, at 128 (when asked whether he wore the
wristband around town or anywhere other than the game against
Plymouth, Foote said, "The time we're wearing it now is a chance
where it actually applies.").[4]

---

[4]    When asked if plaintiffs would be prohibited from wearing
the pink "XX" wristbands at future Bow sporting events even if
Parker Tirrell were not present, Kelley said they would.  She
explained, "It's not a policy [of the Bow School District].  It
would be our practice, knowing what that symbol means and
knowing that we have trans students and staff within our
buildings."  Hearing Transcript, Day Two, Morning Session, at
68.

In the parking lot, after the game had ended, Fellers stood
by his car holding a poster that said "Protect Women's Sports
for Female Athletes" and featured a picture of Riley Gaines.
School officials were concerned that Fellers had intentionally
positioned himself so the girls on the Plymouth team bus —
Parker Tirrell, in particular — would see his display as the bus
exited school property.  Lieutenant Lamy approached Fellers and
told him that school officials had expelled him from the
property, he was not allowed to remain on school grounds, and he
needed to leave.  Again, Fellers objected and refused to comply,
telling Lamy he was not going to leave, he was allowed to
display his poster on school grounds, and Lamy would have to
arrest him.  Eventually, however, Fellers acquiesced and left
the property.[5]

In the wake of the Plymouth match, both Fellers and Foote
received "No Trespass" orders for having violated various

---

[5]    Superintendent Kelley testified that no political signs or
banners or flags of any sort are permitted in the school parking
lot (only signs in support of the sports teams).  Nor was any
type of protest or demonstration permitted.  She also stated
that, like the wristbands, plaintiffs' signs were problematic
because she believed they were targeting a specific student on
the Plymouth team, noting that the signs had not been present at
any other game.  Hearing Transcript, Day Two, Morning Session,
at 80-82.

provisions of the school's policy governing public conduct on school property.  Foote was banned from school property and after-school events for one week.  That ban has since expired. Fellers' received a similar order, but it barred him from school property and events (with some exceptions) for one year, due at least in part to his significant role in causing the disturbance that required police intervention as well as his repeated refusals to obey police commands to vacate the property.  At the temporary restraining order hearing on October 8, 2024, however, the court entered a limited order allowing Fellers to attend his daughter's soccer matches for the rest of the season while plaintiffs' request for injunctive relief was under advisement. The court did, however, ban him from wearing the pink wristbands.

### Preliminary Injunction Standard

"A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of right.'"  Starbucks Corp. v. McKinney, 602 U.S. 339, 345-46 (2024) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008)).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is

in the public interest." <u>Dist. 4 Lodge of the Intl. Assn. of</u>
<u>Machinists & Aerospace Workers Loc. Lodge 207 v. Raimondo</u>, <u>40</u>
<u>F.4th 36, 39</u> (1st Ci<u>r. 2022</u>) (quoting <u>Winter</u>, <u>555 U.S. at 20</u>).

     "[T]hese four elements are not of equal prominence in the
preliminary injunction calculus." <u>Akebia Therapeutics, Inc. v.</u>
<u>Azar</u>, <u>976 F.3d 86, 92</u> (1st Ci<u>r. 2020</u>). "The most important is
whether the movant has demonstrated a likelihood of success on
the merits — an element that" our Court of Appeals has
"described as the 'sine qua non' of the preliminary injunction
inquiry. <u>Id</u>. (quoting <u>Ryan v. U.S. Immigr. & Customs Enf't</u>, <u>974</u>
<u>F.3d 9, 18-19</u> (1st Ci<u>r. 2020)</u>. "If the movant cannot
demonstrate that he is likely to succeed in his quest, the
remaining factors become matters of idle curiosity." <u>Ryan</u>, <u>974</u>
<u>F.3d at 18</u> (internal quotations omitted). This is particularly
true in the context of the First Amendment. <u>See</u> <u>Sindicato</u>
<u>Puertorriqueño de Trabajadores v. Fortuña</u>, <u>699 F.3d 1, 10-11</u>
(1st Ci<u>r. 2012</u>) ("In the First Amendment context, the likelihood
of success on the merits is the linchpin of the preliminary
injunction analysis."). Thus, "to secure preliminary injunctive
relief," plaintiffs must "establish a strong likelihood that
they will ultimately prevail on the merits of their First
Amendment claim." <u>Am. Freedom Def. Initiative v. Massachusetts</u>

Bay Transp. Auth., 781 F.3d 571, 578 (1st Cir. 2015) (internal
quotations omitted).


### Applicable Law and Analysis

The First Amendment to the United States Constitution
prohibits any law "abridging the freedom of speech."[6] U.S.
Const. amend. I.  Our Constitution's protections of freedom of
expression are "fashioned to assure unfettered interchange of
ideas for the bringing about of political and social changes
desired by the people."  Roth v. United States, 354 U.S. 476,
484 (1957).  "As a general matter, the First Amendment means
that government has no power to restrict expression because of
its message, its ideas, its subject matter, or its content."
Ashcroft v. ACLU, 535 U.S. 564, 573 (2002) (citations and
internal punctuation omitted).  "However, this principle, like
other First Amendment principles, is not absolute."  Id.  "[T]he
First Amendment does not guarantee the right to communicate
one's views at all times and places or in any manner that may be
desired."  Heffron v. Int'l Soc. for Krishna Consciousness,
Inc., 452 U.S. 640, 647 (1981).

---

[6]    The First Amendment applies to state and local governments
through the Fourteenth Amendment.  New York Times Co. v.
Sullivan, 376 U.S. 254, 277 (1964).

When analyzing a claim asserting a violation of the First
Amendment, courts generally employ a three-step analysis.  See
Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788,
797 (1985).  First, the court must determine whether plaintiffs'
conduct is speech protected by the First Amendment.  Id.
Second, the court "must identify the nature of the forum,
because the extent to which the Government may limit access
depends on whether the forum is public or nonpublic."  Id.  And,
third, the court must "assess whether the justifications for
exclusion from the relevant forum satisfy the requisite
standard."  Id.

The parties here agree that plaintiffs' conduct in
displaying the symbolic wristbands and exhibiting signs
qualifies as speech protected by the First Amendment.  With
respect to the relevant forum, courts have generally concluded
that school-sponsored events, like high school soccer matches,
constitute a "limited public forum."  For example, the Court of
Appeals for the Second Circuit addressed the forum question in a
case involving a high school basketball game, concluding that:

> With respect to interschool basketball games, we think
> it clear that the Capital Prep gymnasium during such
> games was a limited public forum.
>
> While the invitation to parents and other spectators
> to attend basketball games would not constitute an

invitation to anyone to disrupt the game or
intermissions with speeches about his or her views on
school policy generally, or political issues, or other
subjects not related to the sporting event, persons
attending the game are expected to engage in
expressive activity, chanting and cheering for
whichever team they favor.  Indeed, they are
encouraged to do so; many schools even have at the
games groups of students whose function is to lead the
audience in boisterous expressions of encouragement
and partisanship.

Johnson v. Perry, 859 F.3d 156, 175 (2d Cir. 2017).  Here,

the parties seem to agree that the Bow soccer field and its

immediate environs qualify as a limited public forum under

the control of the School District.  The court agrees as

well.


In a limited public forum, the government's restrictions on

speech "must be reasonable in light of the purpose served by the

forum" and "must not discriminate against speech on the basis of

viewpoint."  Good News Club v. Milford Cent. Sch., 533 U.S. 98,

106-07 (2001) (citations and internal punctuation omitted).


A.   Reasonable Restrictions on Speech.

"In a limited public forum, the reasonableness analysis

turns on the particular purpose and characteristics of the forum

and the extent to which the restrictions on speech are

'reasonably related' to maintaining the environment the

government intended to create in that forum." Tyler v. City of
Kingston, 74 F.4th 57, 63 (2d Cir. 2023) (citations omitted).

Ideally, high school athletics serve as an extension of the
classroom, where students practice problem-solving skills and
resilience, work collectively with their teammates towards a
shared goal, and learn how to win and lose with dignity and
grace.  Of course, spectators play an important role in high
school athletics, helping to foster community spirit and unity,
and providing support for the athletes competing.  But, at their
core, interscholastic sports are, of course, "scholastic,"
intended and created for students.  And, as the Supreme Court
has emphasized, schools "enjoy a significant measure of
authority over the type of officially recognized activities in
which their students participate." Christian Legal Soc. Chapter
of the Univ. of California, Hastings Coll. of the L. v.
Martinez, 561 U.S. 661, 686-87 (2010) (citation omitted).

Given the nature of the soccer field and its immediately
surrounding environs as a limited public forum, and "the
educational context" in which this dispute arises, "First
Amendment rights . . . must be analyzed in light of the special
characteristics of the school environment." Id. at 685.  Any
assessment of the reasonableness of the School District's speech

restrictions must, of course, take those characteristics into account.  "The Supreme Court has long held that schools have a special interest in regulating speech that 'materially disrupts classwork or involves substantial disorder or invasion of the rights of others.'"  Doe v. Hopkinton Pub. Sch., 19 F.4th 493, 505 (1st Cir. 2021) (quoting Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 513 (1969)).

Recently, our Court of Appeals exhaustively examined the "vexing question of when (if ever) public-school students' First Amendment rights must give way to school administrators' authority to regulate speech that (though expressed passively, silently, and without mentioning any specific students) assertedly demeans characteristics of personal identity, such as race, sex, religion, or sexual orientation."  L.M. v. Town of Middleborough, Massachusetts, 103 F.4th 854, 860 (1st Cir. 2024).  In L.M., the plaintiff, a middle school student, wore a t-shirt to school that read "There Are Only Two Genders."  He was told by school administrators that he could not wear the shirt at school because "multiple members of the [school's] LGBTQ+ population" "would be [negatively] impacted by the t-shirt's message," and his wearing of the shirt could "potentially disrupt classes."  Id. at 861-62.  Because school administrators understood L.M.'s message as one that targeted

"students of a protected class; namely in the area of gender identity," they determined that the message was "likely to be considered discriminatory, harassing and/or bullying . . . by suggesting that [others'] sexual orientation, gender identity or expression does not exist or is invalid." <u>Id</u>. at 862.

L.M. filed suit, alleging that, by barring him from wearing the shirt, the school had violated his free speech rights under the First Amendment. Our Court of Appeals noted that:

> courts appear to have converged on the shared understanding — most fully articulated in <u>Nuxoll [ex rel. Nuxoll v. Indian Prairie Sch. Dist.</u>, <u>523 F.3d 668</u> (7th Ci<u>r. 2008</u>)] — that school officials may bar passive and silently expressed messages by students at school that target no specific student if:
>
> > (1) the expression is reasonably interpreted to demean one of those characteristics of personal identity, given the common understanding that such characteristics are "unalterable or otherwise deeply rooted" and that demeaning them "strike[s] a person at the core of his being," <u>Nuxoll</u>, <u>523 F.3d at 671</u>; <u>cf. Saxe [v. State Coll. Area Sch. Dist.</u>, <u>240 F.3d 200, 206</u> (3d Ci<u>r. 2001</u>)] (noting the especially incendiary nature of "disparaging comment[s] directed at an individual's sex, race, or some other personal characteristic" (emphasis added)); and
> >
> > (2) the demeaning message is reasonably forecasted to "poison the educational atmosphere" due to its serious negative psychological impact on students with the demeaned characteristic and thereby lead to "symptoms of a sick school — symptoms therefore of substantial disruption," <u>Nuxoll</u>, <u>523 F.3d at 674</u>, <u>676</u>.

> Our review of these rulings persuades us that <u>Tinker</u>
> permits public-school authorities to regulate such
> expression when they can make the two showings
> described above.  We agree that those showings suffice
> to ensure that speech is being barred only for reasons
> <u>Tinker</u> permits and not merely because it is
> "offensive" in the way that a controversial opinion
> always may be.

<u>L.M.</u>, <u>103 F.4th at 873-74</u>.  The court went on, noting that school authorities were not "required to prove that unless the speech at issue is forbidden serious consequences will in fact ensue," since "that could rarely be proved."  <u>Id</u>. at 874. Instead, "[it] is enough for the school to present facts which might <u>reasonably lead school officials to forecast</u> substantial disruption."  <u>Id</u>. (emphasis supplied; internal quotation omitted).  Finally, the court noted that:

> the special characteristics of the school environment
> warrant affording school officials the ability to
> respond to the way speech demeaning other students'
> unalterable or otherwise deeply rooted personal
> characteristics can poison the school atmosphere.
> . . . Part of a public school's mission must be to
> teach students of differing races, creeds and colors
> to engage each other in civil terms rather than in
> terms of debate highly offensive or highly threatening
> to others.

<u>Id</u>. at 878 (citations and internal punctuation omitted).


With those principles in mind, the appellate court found reasonable the school's assessment that "the message in this

school context would so negatively affect the psychology of
young students with the demeaned gender identities that it would
poison the educational atmosphere and so result in declines in
those students' academic performance and increases in their
absences from school," creating "symptoms of a sick school and
therefore of substantial disruption," Id. at 882 (internal
quotations omitted) (cleaned up).

While L.M. is, as plaintiffs' counsel has repeatedly
stressed, a student speech case that does not involve the
different speech rights accorded to adult invitees to high
school soccer matches, it is nevertheless both relevant and
instructive.  It fully describes the kind of demeaning, bullying
message that can be constitutionally regulated in a public
school setting.

Plaintiffs say that the only message meant to be
communicated by their pink wristbands marked with "XX" was that
they opposed transgender girls or women participating in girls'
or women's sporting events.  They argue, as the plaintiff in
L.M. essentially argued, that the Bow School District could not
reasonably conclude that their symbolic wristbands communicated
a message demeaning the gender identities of transgender
students in general or Parker Tirrell in particular, nor could

33

the School District reasonably conclude that their message was specifically aimed at Parker.  The court disagrees.

As in L.M. and given the evidence of record, the Bow School District, in the context described in testimony by Superintendent Kelley and others, reasonably interpreted the pink XX wristbands to be sending, in substance, the same message described in L.M. with respect to the "only two genders" shirt. That is, the School District understood that in the broad context of opposition to transgender girls' participation in girls' sports, the symbolic message included a demeaning and harassing assertion – an assertion of inauthenticity, falsity and nonexistence with respect to some students' core and immutable characteristics (i.e., their gender identities).  And, it seems evident that had the symbols been worn by students in school or during school activities, they could be barred as reasonably interpreted in context to convey a harassing, demeaning message likely to have a serious negative psychological impact on students who identify as transgender.

There appears to be no basis in this record upon which to substitute this court's judgment for the School District's with respect to whether the wristbands, in the context of women's and girls' sports, carried those demeaning assertions.  The evidence

presented fully supports the School District's conclusions relative to the full impact of the symbols and posters displayed by plaintiffs.  It is, of course, as <u>L.M.</u> notes, the reasonable understanding of the School District, and not the subjective intent of the protesting invitees, that determines whether messaging would likely be understood as demeaning to particular students:

> <u>L.M.</u> does not dispute, however, that the message expresses the view that students with different "beliefs about the nature of [their] existence" are wrong.
>
> Consistent with that acknowledgement, the District Court determined the message is reasonably understood to be an assertion, however sincerely believed, that individuals who do not identify as either male or female have no gender with which they may identify, as male and female are their only options.  As the District Court put it, the message "may communicate that only two gender identities — male and female — are valid, and any others are invalid or nonexistent."
>
> We agree with the District Court and so cannot say the message, on its face, shows [the school] acted unreasonably in concluding that the Shirt ["only two genders"] would be understood . . . to demean the identity of transgender and gender non-conforming NMS students.  <u>Cf.</u> <u>Nuxoll</u>, <u>523 F.3d at 671</u> ("For most people these are major components of their personal identity — none more so than a sexual orientation that deviates from the norm.  Such comments can strike a person to the core of his being.")  (citations omitted)

<u>L.M.</u>, <u>103 F.4th at 880</u>.[7]

---

[7]    It appears that, like the School District defendants, the coach of the Plymouth soccer team also interpreted the

To be fair, plaintiffs say they did not mean to "target" or harass Parker Tirrell during the soccer match.  They argue that they simply oppose transgender girls playing on girls' sports teams, based upon reasonable concerns related to unfair competition, risk of injury, and lost opportunities for their daughters to succeed.  The XX wristbands, they contend, were meant to communicate that limited viewpoint on a controversial issue of some public interest, and no more.  Plaintiffs also correctly point out that many people agree with their position (witness the New Hampshire legislation barring transgender participation) or at least agree that some system that is capable of allowing transgender participation but also mitigates the risk of injury and potential physical dominance should be developed (as both Superintendent Kelly and Mr. Foote seemed to agree).

Critically, however, plaintiffs' subjective intent and the narrow, plausibly inoffensive, meaning they ascribe to the symbols used are not controlling.  Context is everything.  The

---

plaintiffs' wristbands to target transgender girls, and Parker
Tirrell specifically.  It bears repeating that the coach told
Athletic Director Desilets that if Parker Tirrell learned that
the game had been stopped because of a protest related to her
presence at the game, she would be "devastated."

evidence of record amply supports the School District's view
that the XX symbol on a pink background is well known among
those interested in the transgender sports issue, and it is
associated with other meanings that are far more offensive than
those ascribed by plaintiffs.  That is to say, school
authorities are not obligated to ignore the broader and perhaps
more prevalent meanings generally ascribed to the symbol for the
purpose of assessing its demeaning and harassing character when
aimed at (or put on display before) transgender students in the
context of interscholastic athletics.

    The message generally ascribed to the XX symbol, in a
context such as that presented here, can reasonably be
understood as directly assaulting those who identify as
transgender women.  Beyond "I oppose your participation," the
message can reasonably be understood to include assertions that
there are "only two genders," and those who identify as
something other than male or female are wrong and their gender
identities are false, inauthentic, nonexistent, and not entitled
to respect.  Because gender identities are characteristics of
personal identity that are "unalterable or otherwise deeply
rooted," the demeaning of which "strikes a person at the core of
his being," Nuxoll, 523 F.3d at 671, and because Bow school
authorities reasonably interpreted the symbols used by

plaintiffs, in context, as conveying a demeaning and harassing message, they properly interceded to protect students from injuries likely to be suffered. <u>Cf.</u>, <u>Doe by & through Doe v. Boyertown Area Sch. Dist.</u>, <u>897 F.3d 518, 528</u>-29 (3d Ci<u>r. 2018</u>) ("The Supreme Court has regularly held that the state has a compelling interest in protecting the physical and psychological well-being of minors. We have similarly found that the government has a compelling interest in protecting and caring for children in various contexts. Mistreatment of transgender students can exacerbate gender dysphoria, lead to negative educational outcomes, and precipitate self-injurious behavior. When transgender students face discrimination in schools, the risk to their wellbeing cannot be overstated — indeed, it can be life threatening.").

While plaintiffs may very well have never intended to communicate a demeaning or harassing message directed at Parker Tirrell or any other transgender students, the symbols and posters they displayed were fully capable of conveying such a message. And, that broader messaging is what the school authorities reasonably understood and appropriately tried to prevent. Perhaps more accurately — that is what the record evidence shows at this stage.

Having reasonably determined that the wristband symbols would likely be understood as demeaning, harassing, and psychologically injurious - potentially in severe ways - to both any transgender students attending the soccer game, and specifically Parker Tirrell, school authorities were duty bound to protect those students from the harassment, intimidation, and anxiety likely to follow:

> First, there is the demeaning nature of the message. To be sure there is a spectrum of messages that are demeaning of characteristics of race, sex, religion, sexual orientation, and so gender identity as well. It is hard to see how it would be unreasonable to forecast the disruptive impact of messages at the most demeaning end of that spectrum, given their tendency to poison the educational atmosphere.  See Nuxoll, 523 F.3d at 624 ("Imagine the psychological effects if plaintiff wore a t-shirt on which was written 'blacks have lower IQs than whites' or 'a woman's place is in the home.'"); Saxe, 240 F.3d at 206, 217 (reasoning that "disparaging comments" about other students' personal characteristics may "create a 'hostile environment'" and thus be restricted if there is a threshold showing of severity or pervasiveness.").

L.M., 103 F.4th at 881.  Demeaning messages of the sort described, delivered during a school-sponsored event, are likely even more damaging to vulnerable students when delivered by adults attending the event.

It is correct to note, as plaintiffs do, that their own free speech rights are not limited to the same degree as a

student's.  The question then becomes whether the School
District can manage its athletic events and its athletic fields
and facilities — that is, its limited public forum — in a manner
that protects its students from adult speech that can reasonably
be seen to target a specific student participating in the event
(as well as other similar gender-identifying students) by
invited adult spectators, when that speech demeans, harasses,
intimidates, and bullies.  The answer is straightforward: Of
course it can.  Indeed, school authorities are obligated to do
so.

The opinion in LM makes plain that the displaying of a
symbolic expressive message that is reasonably understood to
demean the gender identity of a specific transgender high school
athlete (or transgender students generally), can be regarded by
school authorities as targeting, harassing, intimidating,
bullying, and abusive of those students.  Such symbolic speech
is entirely inconsistent with the school's pedagogical goals and
undermines the core values sought to be instilled by
interscholastic athletics.  Speech of that sort can be
restricted in a government-sponsored limited public forum such
as the Bow soccer fields.  Stated slightly differently, in the
context presented, adult invitees attending a high school

athletic event do not enjoy a First Amendment protected right to
engage in such conduct.


B.    Viewpoint Neutrality.

Plaintiffs also argue that the restriction on their
symbolic speech is constitutionally impermissible because it
amounts to "viewpoint" discrimination.  That argument is
consistent with neither the evidence of record nor the
applicable law.


To be sure, government restrictions on speech in a limited
public forum "must not discriminate against speech on the basis
of viewpoint."  Good News Club v. Milford Cent. Sch., 533 U.S.
98, 106-07 (2001) (quotation omitted).  But, restricting the
wearing of symbolic wristbands and the displaying of posters
conveying a similar message, given the negative and demeaning
messaging the School District reasonably understood them to
convey, is not viewpoint based.  It is effects based.  It is
also entirely consistent with the lawful (and viewpoint neutral)
rules and guidelines imposed on all attendees at BHS athletic
events.


As the Athletic Director made clear in his email to the
student athletes' parents, different opinions with respect to

transgender sports participation were "perfectly fine."  And as
Superintendent Marcy Kelley, testified, the issue of transgender
girls playing in girls' sports is a decidedly nuanced one
(involving numerous considerations, such as players' size,
strength, height, speed, individual liberties, fair competition,
etc.).  Indeed, many reasonable people of good faith fully agree
with plaintiffs' articulated viewpoint, as they limit it.

Critically, however, the evidence of record does not
suggest that the School District favored or disfavored
plaintiffs' position on that issue or any other position
spectators might have with regard to that controversial matter
of ongoing public interest — that is, whether and, if so, to
what extent, transgender athletes should participate in girls'
sports.  The School District did, however, have a position with
respect to adult parents targeting a visiting student athlete at
a school soccer match with demeaning, hurtful, and harassing
speech based on her gender identification.  The School District
reasonably prohibited any speech constituting harassment of, or
that demeaned the transgender athlete, or any other student for
that matter - whatever the cause, or idea, or policy underlying
that harassment and intimidating conduct.  That plaintiffs'
expressive conduct on one side of an issue of public concern ran
afoul of the School District's established, viewpoint neutral

42

regulations does not mean that plaintiffs were the victims of viewpoint discrimination.  As the Supreme Court has noted, "a regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."  Christian Legal Soc., 561 U.S. at 695 (internal quotations omitted) (cleaned up).  That is the case here with respect to the challenged rules and regulations of the Bow High School.

The evidence of record shows that it was not the plaintiffs' viewpoint (as they have described it) that posed a problem.  That is to say, the evidence persuasively demonstrates that the School District did not act because plaintiffs communicated an opinion opposing transgender players participating in girls' sports.  Instead, the School District took action because it reasonably concluded that plaintiffs communicated a symbolic message (however quietly and passively) that was demeaning, harassing, and harmful to, and targeted at, a specific transgender player as well as other transgender students.  That does not constitute unlawful viewpoint discrimination.

### Conclusion

The Bow athletic fields and adjacent areas constitute a limited public forum.  The School District's rules and regulations governing conduct within that forum and at issue here are reasonable, viewpoint neutral, and consistent with the schools' pedagogical goals.  In the context presented, the School District defendants reasonably determined that the symbols used by plaintiffs conveyed a message that targeted a specific transgender student on the visiting team (as well as any transgender students present at the game) and demeaned a core immutable characteristic of their personal identity – that is gender and gender identity.  And, having reasonably concluded that such a message might "poison the educational atmosphere" sought to be fostered at school-sponsored athletic events and cause potentially serious harm to the participating transgender athlete as well as other transgender students, defendants reasonably and lawfully regulated plaintiffs' speech.

Although plaintiffs do not concede the contextually demeaning or harassing nature of their symbolic messaging, at this point the evidence of record amply supports the School District's view.  The broader and more demeaning/harassing message the School District understood plaintiffs' "XX" symbols to convey was, in context, entirely reasonable.  As noted

44

earlier, symbols can carry meaning well beyond what the speaker may intend to proclaim or advocate.  Plaintiffs are, of course, free to display their symbols and signage in any public forum available for such purposes.  But they may not do so at Bow High School-sponsored activities in contravention of the reasonable restrictions imposed by the School District.

For the forgoing reasons, as well as those articulated in defendants' legal memoranda (documents no. 22 and 73), plaintiffs' have failed to demonstrate a likelihood of success on the merits of their claims.  Consequently, their Motion for Preliminary Injunction (**document no. 14**) is necessarily denied.

If appropriate, the parties should advise the clerk within fourteen (14) days if they wish to supplement the evidentiary record or submit supplemental briefing in advance of a ruling on plaintiffs' request for permanent injunctive relief.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 14, 2025

cc:  Counsel of Record

45

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| KYLE FELLERS, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 1:24-cv-311-SM-AJ |
| MARCEY KELLEY, *et al.*, | |
| Defendants. | |

## PLAINTIFFS' NOTICE ON PERMANENT INJUNCTION

Pursuant to this Court's April 14 order, <u>Dkt. 80 at 45</u>, Plaintiffs advise the Court that they do not intend to supplement the evidentiary record or submit supplemental briefing in advance of the Court's ruling on Plaintiffs' request for permanent injunctive relief. Plaintiffs' briefing on their motion for the preliminary injunction and the evidentiary record developed for that motion suffices and applies equally to any ruling on the permanent injunction.

Dated: April 14, 2025            Respectfully submitted,

*/s/ Endel Kolde*            By:    */s/ Richard J. Lehmann*
Endel Kolde*                        Richard J. Lehmann
DC Bar No. 1782129                  New Hampshire Bar No. 9339
Brett Nolan*                        LEHMANN MAJOR LIST, PLLC
DC Bar No. 90014964                 6 Garvins Falls Rd,
Nathan Ristuccia*[1]                Concord, NH 03301
Virginia Bar No. 98372              603.731.5435
INSTITUTE FOR FREE SPEECH           rick@nhlawyer.com
1150 Connecticut Avenue, N.W.
Suite 801
Washington, DC 20036
202.301.3300

---

[1] Not a D.C. Bar Member but providing legal services in the District of Columbia exclusively before federal courts, as authorized by D.C. Ct. App. R. 49(c)(3).

dkolde@ifs.org
bnolan@ifs.org
nristuccia@ifs.org

* Pro hac vice